FILED

2010 Aug-04 AM 10:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ERNESTINE M. WOODS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:09-CV-0512-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Ernestine Woods, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB").   Ms. Woods timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Woods was fifty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education.  (Doc. 8 at

2.)  Her past work experience includes employment as a certified nurse's aide.  (Tr. at 62, Doc. 8 at 2.)  Ms. Woods claims that she became disabled on May 12, 2006, due to degenerative disc disease and glaucoma.  (Tr. at 99.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).  Otherwise, the analysis

continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Woods met the insured status requirements of the Social Security Act through September 30, 2010.  (Tr. at 12.)  He further determined that Ms. Woods has not engaged in substantial gainful activity since the alleged onset date of her disability.  *Id*.  According to the ALJ, Plaintiff has the "following severe combination of impairments: obesity, herniated intervertebral disk of the lumbar spine, hypertension, and glaucoma."  *Id*.  However, he found that these impairments neither met nor medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id*. at 13.  The ALJ determined that Ms. Woods has the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) with a sit/stand opinion [sic].  She has no limitations of the upper extremities, but the lower extremities are limited to occasional use.  She can occasionally climb ramps and stairs, but never work on ladders or scaffolds.  She can occasionally balance, stoop, and crouch; must avoid wetness, gas, poor ventilation; and never work around dangerous machinery or unprotected heights.   With peripheral vision limitations, she can only perform near vision jobs.

*Id*.

The ALJ then determined Plaintiff was not capable of performing past relevant work.  (Tr. at 16.)  However, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there are a number of jobs in the national economy Plaintiff can perform.  *Id*.  Based on the testimony of a vocational expert ("VE"), these jobs include work as a ticket seller (80,000 jobs nationally; 4,000 regionally), information clerk (50,000 jobs nationally; 2,000 regionally), and cashier (150,000 jobs nationally; 4,000 regionally).  *Id*. at 17.  Accordingly, the ALJ entered a finding that Plaintiff was not under a disability, as defined in the Social Security Act, from May 12, 2006, through the date of the decision.  *Id*.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Robinson v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Woods alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for two reasons.  (Doc. 8 at 13-20.)  First, Plaintiff claims the ALJ "failed to properly evaluate the claimant's complaints of pain as required under the Eleventh Circuit Pain Standard."  *Id*. at 13.  Second, Plaintiff contends the ALJ "erred with regard to the evaluation of the effect of obesity on Ms. Woods' severe impairments of recurring herniated intervertebral disk of the lumbar spine, degenerative disc disease and chronic pain."  *Id*. at 18.

A.     Subjective Complaints of Pain.

To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In the instant case, the ALJ found that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 14). However, he further determined that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." *Id*.

In making his determination, the ALJ initially noted Plaintiff's history of back surgeries, which were performed in March 2004 (microdiskectomy and laminectomy), June 2005 (left L4-5 recurrent microscopic lumbar diskectomy), and August 2006 (left L4-5 microscopic lumbar diskectomy). (Tr. at 12.) The second and third of Plaintiff's three surgeries were performed by Dr. Seyed M. Emadian. *Id*. at 12, 341-64. Following the third surgery, on September 12, 2006, Dr. Emadian examined Plaintiff. *Id*. at 14, 341-46. As noted by the ALJ, although Plaintiff reported some soreness in her lower back, she also reported "complete resolution of her radicular symptoms". *Id*. Dr. Emadian noted "[e]xamination of all muscle groups reveals 5/5 strength in the lower extremities"; no abnormality in bulk or tone; no abnormal muscle movements; sensation was intact, graphesthesia

and streognosis were normal, and there was no evidence of dysesthesia or hyperesthesia. *Id*. at 14, 341. Further, Plaintiff's deep tendon reflexes were 2+/4 and symmetric; no pathologic reflexes; Babinski responses were plantar flexion bilaterally; no abnormal ankle clonus; gait was cautious; and Plaintiff's straight leg raising and crossed leg raising were negative. *Id*. at 14-15, 341-42. Finally, Dr. Emadian noted Plaintiff appeared to be "doing well" following surgery and she had "some low back pain that is not unexpected." *Id*. at 15, 342. Dr. Emadian instructed Plaintiff to return for "progress evaluation" in two months and further noted that Plaintiff knew to call if there were any "acute changes in her condition", however, Plaintiff never returned to Dr. Emadian following the September 12, 2006 examination.[1] *Id*. at 14-15, 341-42.

_____

[1]Plaintiff points out that, prior to the third surgery, on August 11, 2006, Fox Army Health Center ("Fox Army") conferred with Dr. Emadian and determined that Fox Army would provide Plaintiff with pain management after the third surgery was performed. (Doc. 8 at 15, Tr. at 288.) Plaintiff further notes that in her follow-up with Dr. Emadian on September 12, 2006, he reported complete resolution of her radicular symptoms, although she suffered from continued soreness in her lower back. (Doc. 8 at 15, Tr. at 341-42.) However, Plaintiff neglects to note that while Dr. Emadian did refer her to Fox Army for pain management following the surgery, he still instructed her to return for a progress evaluation in two months and to call with any acute changes. (Tr. at 342.) There is nothing in the record to indicate that Plaintiff followed these instructions.

Although Plaintiff never returned to Dr. Emadian, she did make several trips to Fox Army between April of 2005 and March 2008 due to back pain and spasms.  (Tr. at 13-15, 286-332, 380-412, 414-40.)  However, the ALJ noted that while the Fox Army records from February 26, 2007, through March 12, 2008, indicated Plaintiff exhibited tenderness on palpation and muscle spasms, she had no swelling, indurations, or aythema, and neurologically she had normal motor strength, gait and stance were normal, and reflexes were normal.  *Id.* at 15, 381-82, 385, 392, 396, 405, 408, 419. Additionally, the ALJ noted that after each visit to Fox Army, Plaintiff was released without limitations.  *Id.* at 15, 382, 385, 397, 409, 422, 436.

In further discrediting Plaintiff's complaints of pain, the ALJ noted that Plaintiff was released to return to work after her last back surgery, but she chose to attend college because she wasn't working.  (Tr. at 14.) Although Plaintiff testified that she quit going to school in November 2007, this was due to concentration problems, not because of ongoing back pain. *Id.*  Additionally, Plaintiff claimed she did not return to work not because she could not work, but because she was scared to work out of fear of another surgery.  *Id.* at 15, 32-33.  Yet Plaintiff further testified that she

does the dishes, cooks, makes the bed, drives, grocery shops, and waters outside plants.  *Id*. at 15, 35, 37, 41-42, 44, 58.  Finally, the ALJ reported that during the hearing, Plaintiff "exhibited a great flair of screaming as if in severe pain and walking around the room".  *Id*. at 15.  The ALJ found Plaintiff to be unconvincing and "severely reduced her credibility".  *Id*.

Based upon the medical record as a whole and Plaintiff's testimony, it is apparent that the ALJ properly evaluated Plaintiff's complaints of pain.

B.      Obesity.

Plaintiff next contends that the ALJ "erred by failing to consider the claimant's obesity as a factor in determining her residual functional capacity".  (Doc. 8 at 18-19.)  Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined effect of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Swindel v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).  When there is a combination of impairments, the claimant may be found disabled even though none of the individual impairments, including pain, is disabling.  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

The Eleventh Circuit has held that an ALJ's statement that:

[B]ased upon a thorough consideration of all evidence, the ALJ concludes the appellant is not suffering from any impairment, *or combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months

is sufficient evidence of proper consideration of the claimant's combined impairments.  *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1987). *See also Jones v. Department of Health and Human Serv's*, 941 F.2d 1529, 1553 (11th Cir. 1991) (holding that ALJ's statement that though claimant "'has severe residuals of an injury' he does not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4'" to be sufficient evidence of combined impairment consideration).

In the instant case, the ALJ stated that "[t]hough the claimant [is

obese], it, presently, has not in combination with her other impairments impacted on her musculoskeletal system or general health as to cause the claimant's treating doctors to diagnose her with impairments, secondary to obesity or impairments in combination with obesity." (Tr. at 15.)  This is sufficient to show that the ALJ did consider Plaintiff's obesity in combination with her other impairments.  *See Wheeler* 784 F.2d 1076.

Further, an individual's RFC is an example of an issue that is administrative in nature, not a medical issue.  Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.).  The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ.  *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL 374183 at *5.  According to Soc. Sec. Rul. 96-8p, "[t]he RFC assessment must always consider and address medical source opinions.  If an RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  1996 WL 374184 (S.S.A.).  His decision must be based not only upon the medical evidence, but upon all evidence in the record.  *Id*.  Further, while medical

opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence she believes will prove her alleged disability. *See* 20 C.F.R. § 404.1512(a) and (c). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

Plaintiff claims that because she informed her doctor at Fox Army

Health Center that her back pain was becoming worse because of her weight gain (Tr. at 383-85), and because none of Plaintiff's physicians made a statement to the contrary, the ALJ should have considered Plaintiff's obesity in determining her RFC.  (Doc. 8 at 19-20.)  Although Plaintiff is correct that there is nothing in the record to contrast her own statement, the ALJ properly noted that "no physician treating the claimant reported that the claimant's weight significantly limited her or caused her any problems with musculoskeletal impairments."  (Tr. at 15.)  Additionally, the ALJ noted that, while physicians have recommended weight loss, "no physician has referred her for weight loss nor has any physician noted that the claimant's obesity caused concern with frequent discussions or advices that it was imperative for her to lose weight."  *Id*.  Further, as noted above, the ALJ properly discredited Plaintiff's complaints of pain.

Thus, the ALJ properly considered Plaintiff's obesity in combination with her other impairments and correctly considered Plaintiff's obesity in determining her RFC.

IV.     Conclusion.

Because the Court finds that the Commissioner's final decision applies

the proper legal standards and is supported by substantial evidence, the

decision of the Commissioner will be affirmed by separate order.

Done this <u>4th</u> day of <u>August 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

**153671**